`UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

ELIZABETH K. VROMAN,

                                        Plaintiff,

        v.                                              1:07-CV-395
                                                            (FJS)

COMMISSIONER OF SOCIAL SECURITY,

                                        Defendant.
_____

APPEARANCES                          OF COUNSEL

OFFICE OF PETER M. MARGOLIUS         PETER M. MARGOLIUS, ESQ.
7 Howard Street
Catskill, New York 12414
Attorneys for Plaintiff


SOCIAL SECURITY ADMINISTRATION       VERNON NORWOOD, ESQ.
OFFICE OF REGIONAL
GENERAL COUNSEL - REGION II
26 Federal Plaza - Room 3904
New York, New York 10278
Attorneys for Defendant


SCULLIN, Senior Judge

## MEMORANDUM-DECISION AND ORDER

## I. INTRODUCTION

Plaintiff brought this action pursuant to the Social Security Act ("the Act"), 42 U.S.C.

§§ 405(g) and 1383(c)(3), seeking judicial review of a final decision of the Commissioner of Social

Security (the "Commissioner"), denying her application for Supplemental Security Income ("SSI").

Plaintiff requests that the Court reverse the Administrative Law Judge's ("ALJ") decision or remand

the case to the ALJ for further evaluation of the evidence.

Currently before this Court are Plaintiff's and Defendant's cross-motions for judgment on the

pleadings or, in the alternative, for summary judgment. *See generally* Dkt. Nos. 12, 15.


## II. BACKGROUND

### A.    Procedural history

Plaintiff, then thirty-eight, filed an application for SSI on April 24, 2001.  *See*

Administrative Record ("AR") at 84.  In her disability report, Plaintiff cited scoliosis, chronic pain,

sinus problems, an inability to close her right hand, diarrhea, nerve damage, and acid reflux

("GERD").  *See id*. at 98.  The Social Security Administration denied Plaintiff's application for SSI

on September 6, 2001.  *See id*. at 45.  Plaintiff filed a timely request for a hearing on September 26,

2001, which was held before ALJ Robert Wright in Albany, New York, on June 3, 2003.  *See id*. at

49, 19.  Attorney Susan Bentley represented Plaintiff, who appeared and testified.  *See id*. at 19, 22.

ALJ Wright considered the case *de novo* and issued a written decision denying Plaintiff's

claim on July 14, 2003.  *See* AR at 12-18.  The ALJ's decision became the Commissioner's final

decision on December 30, 2003, when the Appeals Council of the Social Security Administration

denied Plaintiff's request for review.  *See id.* at 3-6.  Plaintiff then filed an action in this Court, which resulted in a stipulation and order of remand on December 9, 2004.  *See Vroman v. Comm'r of Soc. Sec.*, No. 1:04-CV-227, Dkt. No. 13.  The Appeals Council issued an order on February 25, 2005, that vacated the decision of ALJ Wright and remanded the case to develop the record further, to obtain further information regarding Plaintiff's orthopedic and mental impairments, to address Plaintiff's subjective complaints further, to obtain testimony from a medical expert, to obtain testimony from a vocational expert, and to evaluate all medical opinions in the record pursuant to 20 C.F.R. § 416.927.  *See* AR at 507-09.

Plaintiff, then forty-four, filed for SSI again on July 23, 2004.  *See* AR at 360.  In her disability report, Plaintiff cited arthritis, tendinitis, carpal tunnel syndrome, irritable bowel syndrome, depression, acid reflux ("GERD"), chronic sinus problems, migraine headaches, neuropathy, kyphosis,[1] fibromyalgia, anxiety attacks, sleeplessness, and chronic fatigue.  *See id.* at 375.  The Social Security Administration denied Plaintiff's claim.[2]  *See id.* at 354.  Plaintiff filed a request for a hearing on February 8, 2005.  *See id.* at 358.

Another hearing occurred on March 9, 2006, in Albany, New York.  *See id.* at 631.  ALJ Joseph Gibbons presided over this hearing.  *See id.*  Attorney Peter M. Margolius represented Plaintiff, who appeared and testified.  *See id.* at 631, 633.  ALJ Gibbons considered the case *de novo* and issued a written decision denying Plaintiff's claim on July 21, 2006.  *See id.* at 343-49.  In

---

[1] Kyphosis is an excessive forward curvature of the thoracic spine.  *See* Stedman's Medical Dictionary (27th ed. 2000).

[2] The Social Security Administration did not date the notice of disapproved claim.  Since the explanation of determination is dated December 16, 2004, *see* AR at 57, the Social Security Administration likely issued the notice of disapproved claim around that time.

his decision, ALJ Gibbons stated that he had carefully reviewed all testimony, arguments, and

documentary evidence regarding Plaintiff's alleged impairments and made the following findings:

> 1) Plaintiff had not engaged in substantial gainful activity since filing
> her application for SSI on April 24, 2001.
>
> 2) Since April 24, 2001, Plaintiff had suffered from severe
> musculoskeletal impairments; these impairments failed to meet or
> medically equal one of the listed impairments in 20 C.F.R. Part 404,
> Subpart P, Appendix 1 (the "Listings").
>
> 3) Since April 24, 2001, Plaintiff retained the RFC to perform light
> work activity but possessed a limited ability to engage in strenuous
> physical exertion or lift overhead.
>
> 4) Plaintiff had no past relevant work experience.
>
> 5) Plaintiff was forty-four years old and had an eleventh-grade
> education.
>
> 6) In light of Plaintiff's RFC and vocational background, Rule 202.17
> of Appendix 2, Subpart P of Social Security Regulations No. 4, in
> conjunction with vocational expert testimony, required a finding of
> not disabled.

*See id.* at 349.

The ALJ's decision became the Commissioner's final decision on February 14, 2007, when

the Social Security Administration denied Plaintiff's request for review.  *See* AR at 326-28.

Plaintiff commenced this action on April 13, 2007, *see* Dkt. No. 1, and filed a supporting

brief on September 10, 2007, *see* Dkt. No. 12.  Defendant filed a response brief on November 26,

2007.  *See* Dkt. No. 15.

**B.      Plaintiff's medical history**

Plaintiff's medical records with Dr. William Browne reveal that, between 1999 and 2003, Plaintiff experienced anxiety, chronic diarrhea, sinus problems, GERD, numbness in various places, mild tendinitis, and problems with concentration and speech.  *See* AR at 165-74, 198-211.  During this time, Dr. Browne prescribed to Plaintiff Clidinium,[3] Celexa,[4] Protonix,[5] Zyrtec,[6] Ultram,[7] Zithromax,[8] and Cyclobenzaprine.[9]  *See id.* at 139, 235.  Dr. Browne also noted that Plaintiff had been on Zoloft.[10]  *See id.* at 413.

On June 2, 2000, Plaintiff saw Dr. Irina Urusova regarding pain and stiffness in the knuckles on her right hand.  *See* AR at 169.  Dr. Urusova opined that this pain might be related to mild carpal tunnel syndrome or cervical radiculopathy.  *See id.*

On June 26, 2001, Plaintiff saw Dr. Berton Shayevitz for a consultative physical examination.  *See* AR at 176-81.  Dr. Shayevitz found that Plaintiff had a limited range of motion in

---

[3] Clidinium is an anticholinergic that is used to treat the symptoms of cramping and abdominal pain.  *See* Stedman's Medical Dictionary (27th ed. 2000).

[4] Celexa is a selective seratonin reuptake inhibitor ("SSRI") that is used to treat depression.  *See* 2010 PDR 3060-1040.

[5] Protonix inhibits gastric acid secretion and is used to treat GERD.  *See* 2006 WL 390497 (PDR).

[6] Zyrtec is an antihistamine and is used for the treatment of seasonal and perennial allergies.  *See* 2009 PDR 4995-7075.

[7] Ultram is an analgesic that is used to manage moderate to moderately severe chronic pain in adults who require constant pain treatment.  *See* 2009 PDR 6077-1600.

[8] Zithromax is an antibiotic.  *See* 2006 WL 384615 (PDR).

[9] Cyclobenzaprine is a type of muscle relaxant that is used to treat muscle spasms.  *See* 2009 PDR 1481-0045.

[10] Zoloft is an SSRI that is used to treat depression.  *See* 2006 WL 384628 (PDR).

her shoulders and diagnosed her with marked dorsal kyphosis, possible scoliosis, chronic sinusitis, diarrhea, pain syndrome, and left shoulder pain.  *See id*. at 180.  Dr. Shayevitz described Plaintiff's prognosis as stable to poor.  *See id*.

On October 8, 2002, the Greene County Department of Social Services Disability Review Team issued a medical report regarding Plaintiff's condition.  *See* AR at 225-27.  The team diagnosed her with somatoform disorder,[11] fibromyalgia, kyphosis, chronic back pain, and joint arthritis.  *See id*. at 227.  A team physician, Dr. Carol Levett, indicated that Plaintiff was so focused on her pain and illnesses that she would be unable to obtain or retain employment.  *See id*. at 230.

Plaintiff treated with Dr. John French beginning in 2002.  She complained of diffuse muscle and joint pain, particularly in her right shoulder, right hand, right hip, and right knee.  *See* AR at 269.  She also complained of back discomfort, sleeplessness, right knee swelling, and occasional tingling of her right hand.  *See id*.  Dr. French indicated that Plaintiff's symptoms suggested fibromyalgia or psyoriatic arthritis, as well as mild carpal tunnel syndrome on her right side, and he prescribed Amitriptyline[12] for her probable fibromyalgia.  *See id*. at 270.  At a follow-up appointment on July 18, 2002, Dr. French injected Plaintiff's right shoulder with Depo-Medrol to relieve pain in that area.  *See id*. at 268.  On August 6, 2002, Dr. French again injected Plaintiff's right shoulder with Depo-Medrol, and he also injected her left knee with the anaesthetic Lidocaine. *See id*. at 306.  On September 12, 2002, Dr. French indicated that Plaintiff's lack of concentration

---

[11] Somatoform disorder is a disorder in which physical symptoms for which there are no demonstrable organic findings are linked to psychological problems.  *See* Stedman's Medical Dictionary (27th ed. 2000).

[12] Amitriptyline is an antidepressant with mild tranquilizing properties.  *See* Stedman's Medical Dictionary (27th ed. 2000).

was probably due to her fibromyalgia, since decreased concentration is a common symptom of fibromyalgia. *See id*. at 307. On November 21, 2003, Dr. French indicated that Plaintiff probably had right carpal tunnel syndrome and recommended that she use a splint. *See id*. at 411.

On March 12, 2003, Plaintiff underwent a psychiatric evaluation with Dr. John Seltenreich. *See* AR at 291. At this exam, Plaintiff reported that she was taking Flexeril (which contains cyclobenzaprine), Amitriptyline, Zyrtec, Aciphex,[13] and Clidinium. *See* AR at 291. She complained of anxiety attacks with palpitations, sweating, dizziness, breathing difficulty, trembling, and some chest pain. *See id*. at 292. Dr. Seltenreich diagnosed Plaintiff with panic disorder without agoraphobia and noted Plaintiff's GERD, kyphosis, fibromyalgia, sinus problems, arthritis, and tendinitis. *See id*. at 293-94. Dr. Seltenreich stated that Plaintiff might benefit from some psychiatric counseling as part of a program to help her adjust to living with chronic health difficulties. *See id*. at 294. Finally, Dr. Seltenreich completed a medical source statement of ability to do work-related activities regarding Plaintiff. *See id*. at 299-300. He determined that Plaintiff's ability to understand, remember, and carry out instructions was not affected by any psychological impairments that Plaintiff might have. *See id*. at 299. He did indicate, however, that, due to her panic attacks, Plaintiff had a slight limitation regarding interacting appropriately with the public and responding appropriately to changes in a routine work setting. *See id*. at 300.

On February 24, 2004, Dr. Rahma Mustapha saw Plaintiff regarding her alleged neuropathy and carpal tunnel syndrome. *See* AR at 497. Dr. Mustapha concluded that Plaintiff showed clinical

---

[13] Aciphex is a proton-pump inhibitor used for short-term treatment of GERD. *See* 2010 PDR 2575-0200.

evidence of bilateral carpal tunnel syndrome and noted that electromyographic ("EMG")[14] studies would reveal the extent of Plaintiff's nerve problems.  *See id.* at 498.  After testing, however, Dr. Mustapha found no evidence of carpal tunnel syndrome on either side, nor evidence of neuropathy on the right side, pending EMG study.  *See id.* at 500.  Plaintiff's EMG study, conducted March 23, 2004, was "essentially normal."  *See id.* at 502.

Plaintiff also treated with Dr. Tracy Erney of the Cairo Family Care Center.  On February 3, 2004, Dr. Erney diagnosed Plaintiff with chronic thoracic back pain, scoliosis, and a recurrent muscle spasm secondary to the scoliosis.  *See* AR at 449.  Dr. Erney further diagnosed Plaintiff with peripheral neuropathy and noted her right carpal tunnel syndrome.  *See id.* at 450.  Dr. Erney also noted that Plaintiff's depression and panic attacks were improving.  *See id.* at 449.  On June 22 and July 26, 2004, Dr. Erney diagnosed Plaintiff with anxiety and depression and prescribed Lexapro[15] and Zyprexa.[16]  *See id.* at 430, 432-33.  Dr. Erney also diagnosed Plaintiff with right upper quadrant pain and directed that she continue with Aciphex.  *See id.* at 430.  On January 17, 2005, Plaintiff saw Dr. Erney, complaining of new pain in the left ribcage, for which Dr. Erney prescribed Naprosyn.[17]  *See id.* at 489.  On July 18, 2005, Plaintiff saw Dr. Erney, who found back, right hip, right leg and right wrist pain, as well as panic attacks.  *See id.* at 488.  Dr. Erney increased

---

[14] Electromyography is the recording of electric activity generated by muscles.  *See* Stedman's Medical Dictionary (27th ed. 2000).

[15] Lexapro is an SSRI used to treat major depressive disorder.  *See* 2010 PDR 3060-0371.

[16] Zyprexa is an antipsychotic that is used to treat depression, bipolar disorder, and schizophrenia.  *See* 2010 PDR 4600-7910.

[17] Naprosyn is an anti-inflammatory drug that is used to treat various forms of arthritis. *See* 2010 PDR 6920-0590.

Plaintiff's Effexor[18] prescription for panic attacks.  *See id.*  At that time, Plaintiff's medications were Aciphex, Tramadol,[19] Librax (which contains Clidinium), Zanaflex,[20] and Effexor.  *See id.* at 488.

On November 23, 2004, Plaintiff saw Dr. Kautilya Puri, who diagnosed her with fibromyalgia, depression with anxiety attacks, bilateral carpal tunnel syndrome, chronic and migraine headaches, and GERD.  *See* AR at 453.  Dr. Puri noted that Plaintiff had no objective limitations to communication, fine motor, or gross motor activity; she recommended that Plaintiff consult with a psychiatrist.  *See id.*  Plaintiff saw Dr. Annette Payne that same day for a psychiatric evaluation.  *See id.* at 455.  Dr. Payne diagnosed Plaintiff with somatoform disorder, moderate major depression, and mild panic disorder with agoraphobia.  *See id.* at 459.

On December 13, 2004, Dr. Ann Herrick issued a psychiatric review of Plaintiff in which she opined that Plaintiff suffered from moderate major depression and mild panic disorder with agoraphobia.  *See* AR at 465, 467.  Dr. Herrick opined that Plaintiff experienced moderate limitation regarding her activities of daily living, maintaining social functioning, and maintaining concentration, persistence, or pace.  *See id.* at 472.  However, Dr. Herrick also opined that Plaintiff's mental problems did not meet the criteria of Sections 12.02, 12.03, 12.04, or 12.06 of the Listings. *See id.* at 473.  Dr. Herrick completed a mental RFC assessment regarding Plaintiff, *see id.* at 476-

---

[18] Effexor is an anti-depressant that is used to treat major depressive disorder, Generalized Anxiety Disorder, Social Anxiety Disorder, and Panic Disorder.  *See* 2010 PDR 9040-2325.

[19] Tramadol is an opiod analgesic that is used to treat moderate to moderately severe chronic pain for adults who require around-the-clock pain management.  *See* 2010 PDR 6082-7000.

[20] Zanaflex is a short-acting muscle relaxant that is used to treat spasms.  *See* WEBMD, http://www.webmd.com/drugs/drug-14706-zanaflex+oral.aspx?drugid=14706&drugname=zanaflex+oral (last visited February 14, 2011).

78, in which she concluded that Plaintiff's mental problems caused her to be moderately limited in the areas of maintaining concentration and attention for prolonged periods, performing activities on a schedule, and completing a normal workday without interruption from psychologically-based symptoms, *see id.* at 476-77.  Dr. Herrick found no limitation in seventeen other areas for which she evaluated Plaintiff and determined that, despite her anxiety and depression, Plaintiff could understand, remember, concentrate, and interact with others sufficiently to perform work-related tasks.  *See id.*

On December 16, 2004, Plaintiff received a physical RFC assessment in which it was determined that she could lift/carry twenty pounds occasionally and ten pounds frequently, stand/walk for six hours in an eight-hour workday, sit for about six hours in an eight-hour workday, and push or pull without limitation.  *See* AR at 481.

On June 21, 2005, Plaintiff saw Dr. Stewart Kaufman regarding pain in one of her feet; Dr. Kaufman diagnosed her with a bunionette in her left foot and a fractured right fourth toe.  *See* AR at 576-77.  Dr. Kaufman also noted that Plaintiff had full range of motion in her upper and lower extremities.  *See id.* at 577.

On July 13, 2005, Plaintiff saw Dr. William Rogers regarding her musculoskeletal maladies. *See* AR at 541.  Dr. Rogers reported that Plaintiff displayed full range of motion in her cervical spine, both shoulders, elbows, wrists, and hands.  *See id.*  Dr. Rogers found that Plaintiff had some discomfort with overhead reaching and that she also had numbness in her right hand.  *See id.*  An examination of Plaintiff's spine revealed mild to moderate thoracic kyphosis.  *See id.*  Dr. Rogers diagnosed Plaintiff with fibromyalgia, thoracic kyphosis, and depression.  *See id.*  In addition, Dr. Rogers completed a medical source statement of Plaintiff's physical ability to perform work-related

activities.  *See id*. at 543.  Dr. Rogers opined that Plaintiff could lift/carry ten pounds occasionally

and less than ten pounds frequently, stand/walk for at least two hours in an eight-hour workday, sit

for less than six hours in an eight-hour workday, and experienced limitation in her upper and lower

extremities regarding pushing and pulling.  *See id*. at 543-44.  Dr. Rogers concluded that Plaintiff

should not climb on ladders, ropes, and scaffolds, and only occasionally climb on ramps and stairs,

balance, kneel, crouch, crawl, and stoop.  *See id*. at 544.  Dr. Rogers also found that Plaintiff could

only occasionally reach, engage in gross and fine manipulation, and feel.  *See id*. at 545.

On August 15, 2005, Plaintiff saw Dr. Joseph E. Bernier for an consultative psychological

examination.  *See* AR at 547-52.  Although Dr. Bernier refrained from issuing a definitive

diagnosis, he stated that Plaintiff displayed some form of depression, ranging from mild to moderate

severity.  *See id*. at 551.  Regarding her work-related mental abilities, Dr. Bernier found that the

cognitive problems attributed to fibromyalgia were unstable and became unpredictably and

intermittently better and then worse.  *See id*. at 552.  However, Dr. Bernier also concluded that

Plaintiff's cognitive impairments caused only a slight to moderate limitation in her ability to

perform work-related mental tasks.  *See id*.

On September 28, 2005, Dr. Ernest Abeles issued a medical source statement of Plaintiff's

physical ability to perform work-related activities.  *See* AR at 590-97.  He concluded that Plaintiff

was not limited in her ability to lift and carry weight, to stand and walk, to sit, and to push or pull.

*See id*. at 590-91.  Dr. Abeles further opined that Plaintiff had no postural, manipulative,

communicative, or environmental limitations.  *See id*. at 591-92.

On October 30, 2005, Dr. Edward Halperin issued a medical source statement of Plaintiff's

mental ability to perform work-related activities.  *See* AR at 600-06.  Dr. Halperin concluded that

-11-

Plaintiff experienced slight limitation in the area of carrying out short, simple instructions and moderate limitation in the areas of understanding and remembering short instructions and making work-related decisions. *See id.* at 600. He found Plaintiff to be markedly impaired in the areas of understanding, remembering, and carrying out detailed instructions. *See id.* Dr. Halperin also found Plaintiff to be moderately or markedly impaired in all areas of interacting with and responding to people and the pressures of a work environment. *See id.* at 601. Dr. Halperin ultimately concluded, however, that none of Plaintiff's mental impairments met or medically equaled any of the impairments described in the Listings. *See id.* at 603.

## III. DISCUSSION

**A.      Standard of Review**

   *1. Substantial evidence*

Absent legal error, a court will uphold the Commissioner's final determination if there is substantial evidence to support it. *See* 42 U.S.C. § 405(g). The Supreme Court has defined substantial evidence to mean "'more than a mere scintilla'" of evidence and "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quotation omitted).

However, where the court has

> "a reasonable basis for doubt whether the ALJ applied correct legal
> principles, application of the substantial evidence standard to uphold
> a finding of no disability creates an unacceptable risk that a claimant
> will be deprived of the right to have her disability determination made
> according to the correct legal principles."

*Schaal v. Apfel*, 134 F.3d 496, 504 (2d Cir. 1998) (quotation omitted).

-12-

### *2. Five-step determination of disability*

To be eligible for SSI, a claimant must show that she suffers from a disability within the meaning of the Act.  The Act defines "disability" as an inability to engage in substantial gainful activity ("SGA") by reason of a medically determinable physical or mental impairment that can be expected to cause death or last for twelve consecutive months.  *See* 42 U.S.C. § 1382c(a)(3)(A).  To determine if a claimant has sustained a disability within the meaning of the Act, the ALJ follows a five-step process:

> 1) The ALJ first determines whether the claimant is engaged in SGA. *See* 20 C.F.R. §§ 416.920(b), 416.972.  If so, the claimant is not disabled.  *See* 20 C.F.R. § 416.920(b).
>
> 2) If the claimant is not engaged in SGA, the ALJ determines if the claimant has a severe impairment or combination of impairments.  *See* 20 C.F.R. § 416.920(c).  If not, the claimant is not disabled.  *See id*.
>
> 3) If the claimant has a severe impairment, the ALJ determines if the impairment meets or equals an impairment found in the appendix to the regulations (the "Listings").  If so, the claimant is disabled.  *See* 20 C.F.R. § 416.920(d).
>
> 4) If the impairment does not meet the requirements of the Listings, the ALJ determines if the claimant can do her past relevant work.  *See* 20 C.F.R. § 416.920(e).  If so, she is not disabled.  *See id*.
>
> 5) If the claimant cannot perform her past relevant work, the ALJ determines if she can perform other work, in light of her RFC, age, education, and experience.  *See* 20 C.F.R. § 416.920(f), (g).  If so, then she is not disabled.  *See id*.  A claimant is only entitled to receive SSI if she cannot perform any alternative gainful activity.  *See id*.; *see also Barnhart v. Thomas*, 540 U.S. 20, 21-22 (2003) (quoting 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B)).

For this test, the burden of proof is on the claimant for the first four steps and on the Commissioner for the fifth step, if the analysis proceeds that far.  *See Balsamo v. Chater*, 142 F.3d 75, 80 (2d Cir. 1998) (quotation and other citations omitted).

**B.      The ALJ's evaluation of Plaintiff's credibility**

A claimant's statements about her condition, on their own, are not enough to establish a

disability.  *See* 20 C.F.R. § 404.1529; *see also* Social Security Ruling ("SSR") 96-7p, 1996 WL

374186, *1 (July 2, 1996); SSR 96-4p, 1996 WL 374187, *2 (July 2, 1996).  The ALJ must

consider a claimant's observable signs and laboratory findings, as well as reported symptoms.  *See*

20 C.F.R. § 404.1529.  A claimant's subjective complaints of pain and limitation are "'entitled to

great weight where . . . [they are] supported by objective medical evidence.'"  *Futia v. Astrue*, No.

1:06-CV-0961, 2009 WL 425657, *6 (N.D.N.Y. Feb. 19, 2009) (quoting *Simmons v. U.S.R.R.*

*Retirement Bd.*, 982 F.2d 49, 56 (2d Cir. 1992)).  However, if a claimant's complaints are not

supported by objective medical evidence, "[t]he Secretary is entitled to rely not only on what the

record says, but also on what it does not say."  *Dumas v. Schweiker*, 712 F.2d 1545, 1553 (2d Cir.

1983) (citations omitted).

Moreover, if a claimant's testimony is not fully supported by objective medical evidence, the

ALJ must employ a two-step process to evaluate a claimant's reported symptoms.  *See* SSR 96-7p,

at *2.  First, the ALJ determines if the claimant has medically determinable impairments that could

produce the alleged symptoms.  *See* 20 C.F.R. § 404.1529(a); *see also* SSR 96-7p, at *2.  Second, if

impairments do exist, the ALJ evaluates the intensity, persistence, and limiting effects of the

symptoms to determine the extent to which the symptoms limit the claimant's ability to work.  *See*

20 C.F.R. § 404.1529(a); *see also* SSR 96-7p, at *2.  In so doing, the ALJ considers (i) the

claimant's daily activities; (ii) the location, duration, frequency, and intensity of the claimant's pain

or other symptoms; (iii) precipitating and aggravating factors; (iv) the type, dosage, effectiveness,

and side effects of any medication the claimant takes or has taken to relieve her pain or other

-14-

symptoms; (v) other treatment the claimant receives or has received to relieve her pain or other symptoms; (vi) any measures that the claimant takes or has taken to relieve her pain or other symptoms; and (vii) any other factors concerning the claimant's functional limitations and restrictions due to her pain or other symptoms. *See* 20 C.F.R. § 416.929(c)(3)(i)-(vii); SSR 96-7p, at *2.

The ALJ's analysis must include a discussion of the relationship between Plaintiff's impairment, Plaintiff's reported symptoms, the ALJ's conclusions regarding Plaintiff's functioning, and why Plaintiff's reported symptoms are or are not consistent with the evidence in the record. *See* SSR 95-5p, 1995 WL 670415, *1 (Oct. 31, 1995). Furthermore, "[t]he reasons for the credibility finding must be grounded in the evidence and articulated in the determination or decision," and the ALJ's decision "must be sufficiently specific to make clear . . . the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p, at *4. Where an ALJ rejects a plaintiff's testimony he must "explicitly state the basis for doing so with sufficient particularity to enable a reviewing court to determine whether those reasons for disbelief were legitimate . . . ." *Ashcraft v. Comm'r of Soc. Sec.*, No. 7:05-cv-1342, 2008 WL 2967512, *9 (N.D.N.Y. July 28, 2008) (citation omitted).

Courts recognize fibromyalgia as a potentially severe impairment that may support a claim for disability. *See id.* at *10 (citing *Green-Younger v. Barnhart*, 335 F.3d 99, 108 (2d Cir. 2003)). However, fibromyalgia is an "'elusive and mysterious disease'" whose "'symptoms are entirely subjective. There are no laboratory tests for the presence or severity of fibromyalgia.'" *Id.* (quotation omitted). The primary symptoms of fibromyalgia are "'pain all over,' fatigue, disturbed sleep, stiffness," and multiple tender spots, wherein if tenderness is present in eleven of the eighteen

-15-

spots, a patient is deemed to have the syndrome.  *Id*. (quotation omitted).

In this case, at her 2006 hearing before ALJ Gibbons, Plaintiff testified that she had trouble walking to the point that she occasionally used a crutch, *see* AR at 646-47, experienced numbness over the right side of her body when she sat for more than twenty minutes, *see id*. at 648, and spent up to two days at a time lying on the floor to manage the pain in her back, *see id*. at 649.  Plaintiff testified that she was able to conduct self-care, *see id*. at 649, wash laundry with help, *see id*. at 645, cook some meals, *see id*. at 657, and clean the bathroom, *see id*. at 658.  However, Plaintiff stated that she could not vacuum, *see id*. at 657, lift groceries, *see id*. at 661, or perform any activities that required her arms to move back and forth, *see id*. at 657.

Regarding her medications, at her hearing, Plaintiff testified to taking Aciphex, Effexor, hydroxyzine,[21] Tramadol, and tizanidine.[22]  *See* AR at 653-54.  Plaintiff testified to experiencing numerous side effects from these medications.  For example, she claimed that Aciphex and Tramadol caused severe abdominal cramps, some of which resulted in vomiting.  *See id*. at 655. Plaintiff testified that Effexor made her "feel very weird . . . like [I'm] sleep walking."  *See id*.

In his decision denying Plaintiff's claim, the ALJ concluded that Plaintiff's hearing testimony was less than credible, reasoning that it did not find support from any objective or clinical findings.  *See* AR at 346.  The ALJ elaborated, stating that he could find no evidence that Plaintiff suffered from symptoms with sufficient frequency, intensity, or duration to render her incapable of performing SGA.  *See id*.  However, the ALJ's credibility finding, while not necessarily incorrect, is

---

[21] Hydroxyzine, an antihistamine, is one of the active ingredients in Zyrtec.  *See* 2006 WL 384629 (PDR).

[22] Tizanidine, a muscle relaxant, is one of the active ingredients in Zanaflex, *supra*, at n. 20.

incomplete.  The ALJ did not discuss Plaintiff's efforts to seek pain relief, particularly in the form of medication.  Over the last several years, Plaintiff has taken a complex regimen of medications to manage and relieve her pain both in the long and short term.  In addition to taking large amounts of prescription drugs, Plaintiff has also endured unpleasant side effects, such as abdominal pain, vomiting, and highly reduced concentration.  *See* AR at 655.  It is also noteworthy that Plaintiff began taking prescription medications for her ailments in 2000 and 2001 and continued with them through the time of her hearing on March 9, 2006.  *See id*. at 139, 653.  Although the ALJ noted some of Plaintiff's medications, he did not discuss them as part of his credibility analysis, nor did he discuss Plaintiff's side effects in his decision.  In cases where a Plaintiff alleges fibromyalgia, "it becomes increasingly important for an ALJ, in assessing credibility, to be faithful to the requirements of the controlling regulations as well as SSR 96-7p[.]"  *Ashcraft*, 2008 WL 2967512, at *11.

The ALJ's ultimate conclusions may very well be correct; however, his analysis must be complete, as the law requires.  Specifically, the ALJ should consider medications and side effects as part of his credibility analysis under 20 C.F.R. § 416.929(c)(3) and SSR 96-7p; accordingly, the Court remands this case for further consideration of Plaintiff's credibility.[23]

---

[23] The Court also remands this case for further consideration of Plaintiff's credibility in light of the nature of her disorder.  In the instant matter, the ALJ's primary reason for discounting Plaintiff's credibility was the lack of objective medical evidence to support her allegation of fibromyalgia.  Since fibromyalgia, by its nature, cannot be detected through objective medical testing, remand is appropriate where an ALJ discounts a plaintiff's credibility regarding fibromyalgia, despite the existence of contrary medical opinions in the record.  *See Willoughby v. Comm'r of Soc. Sec.*, 332 F. Supp. 2d 542, 548 (W.D.N.Y. 2004).  Here, Drs. Levett, French, Seltenreich, Puri, and Rogers indicated that Plaintiff experienced the symptoms of fibromyalgia.

In addition, the ALJ did not follow the two-step process for credibility assessment,

(continued...)

**C.      The ALJ's RFC determination**

The ALJ alone is responsible for determining a claimant's RFC.  *See* 20 C.F.R.

§ 404.1546(c).  When assessing a plaintiff's RFC, the ALJ must "first identify the individual's

functional limitations or restrictions and assess his or her work-related abilities on a function-by-

function basis. . . . Only after that may RFC be expressed in terms of the exertional levels of work,

sedentary, light, medium, heavy, and very heavy."  SSR 96-8p, 1996 WL 374184, *1 (July 2, 1996).

To this end, the ALJ must assess a plaintiff's ability "to perform each of seven strength demands:

Sitting, standing, walking, lifting, carrying, pushing, and pulling."  *Id*. at *5.  Moreover, the ALJ

"must discuss the [plaintiff's] ability to perform sustained work activities in an ordinary work

setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent

work schedule), . . . and describe the maximum amount of each work-related activity the individual

can perform . . . ."  *Id*. at *7 (internal footnote omitted).

When calculating the RFC, an ALJ must consider "the combined effect of all plaintiff's

impairments[.]"  *Lawton v. Comm'r of Soc. Sec.*, No. 7:10-CV-256, 2010 WL 4810676, *12

(N.D.N.Y. Nov. 2, 2010); *see also Dixon v. Shalala*, 54 F.3d 1019, 1031 (2d Cir. 1995).  A proper

RFC assessment accounts for all functional limitations and restrictions caused by a plaintiff's

medically determinable impairments, regardless of whether all of those impairments are severe.  *See*

SSR 96-8p, at *5; *Johnston v. Astrue*, No. CV-07-5089, 2008 WL 4224059, *9 (E.D.N.Y. Sept. 8,

---

[23](...continued)
outlined in SSR 96-7p.  The ALJ never stated whether Plaintiff had medically determinable
impairments that could have produced the alleged symptoms and, therefore, did not fulfill the
first step of the required analysis.  Although Plaintiff did not raise this issue in her brief, the
Court instructs the ALJ to address this issue on remand.

2008) (citation omitted).

Here, substantial evidence exists in the record to support the ALJ's determination of Plaintiff's mental RFC.  Regarding Plaintiff's mental RFC, the ALJ determined that Plaintiff was not limited in her ability to perform basic work-related mental tasks.  *See* AR at 346.  For example, Dr. Seltenreich found that Plaintiff was able to understand and execute simple instructions, maintain concentration and attention, learn new tasks, perform complex tasks, and make appropriate decisions.  *See* AR at 299.  Although he opined that Plaintiff's panic attacks might represent a problem in the area of relating to others, he characterized this limitation as slight.  *See id*. at 300.  In addition, Dr. Bernier characterized Plaintiff's depression as mild to moderate, and he found Plaintiff's ability to understand and execute simple job instructions to be unimpaired.  *See id*. at 553.  He also found no limitation on Plaintiff's ability to deal with routine work changes and to relate to co-workers.  *See id*. at 553-54.  In addition, Dr. Halperin concluded that Plaintiff's mental issues were not severe enough to constitute a disability.  *See id*. at 603.

There is also evidence in the record to support the ALJ's physical RFC determination.  Here, the ALJ concluded that Plaintiff retained the RFC to perform light work activity.  *See* AR at 349.  Light work, by definition, involves lifting or carrying up to twenty pounds occasionally and ten pounds frequently, standing or walking up to six hours of an eight-hour workday, and sitting during the remaining time, and some pushing or pulling of arm or leg controls.  *See* SSR 83-10, 1983 WL 31251, *6 (1983).  To support his conclusion, the ALJ cited a series of unremarkable X-rays and MRIs.  *See* AR at 346.  He also referred to Dr. Kaufman's clinical examination of Plaintiff, which revealed that Plaintiff possessed a full range of motion in her cervical spine, thoracic spine, lumbar spine, upper extremities, and lower extremities.  *See id*. at 346, 576-77.  Moreover, he noted that Dr.

Abeles had found no objective evidence that Plaintiff suffered from any disorder.  *See id.* at 590-92.

Although the ALJ's determination of Plaintiff's physical RFC may ultimately be the correct one, the ALJ's analysis is incomplete because, as the Court has already ruled, the ALJ did not fully evaluate Plaintiff's credibility.  In particular, the ALJ did not discuss the medical treatment Plaintiff had undergone or the nature of her alleged disorder, nor does it appear that he considered Plaintiff's subjective statements when determining her RFC.  *See Genier v. Astrue*, 606 F.3d 46, 50 (2d Cir. 2010).  Accordingly, the Court remands this case for further consideration of Plaintiff's physical RFC, specifically to include a further, more detailed examination of Plaintiff's credibility and how that impacts her RFC.[24]

---

[24] The Court also notes that it does not appear that ALJ Gibbons considered the combined effect of Plaintiff's impairments.  *See Lawton*, 2010 WL 4810676, at *12.  At her hearing before ALJ Gibbons, Plaintiff testified to shooting pain in her leg, difficulty walking, difficulty sitting, back pain, difficulty gripping, and migraine headaches.  *See* AR at 646-48, 661-66.  At her previous hearing before ALJ Wright, Plaintiff testified that she suffered from abdominal pain, severe diarrhea several times per day, and difficulty sleeping.  *See id.* at 622, 624-26.  At that same hearing, Plaintiff also testified to headaches, back pain, and joint pain.  *See id.* at 626.  Plaintiff testified that her migraine headaches rendered her unable to move her head and could cause her to pass out.  *See id.* at 625.  Plaintiff stated that she got headaches approximately three times per week and migraine headaches, which might last up to three or four days, approximately once every other week.  *See id.* at 625.  Plaintiff testified that she had good days, on which she could accomplish her goals for the day, and bad days, on which she could not.  *See id.* at 622.  These bad days occurred approximately three to four times per week.  *See id.*  Although Plaintiff provided the testimony regarding abdominal pain, diarrhea, and joint pain at her first hearing, ALJ Gibbons had an obligation "to consider relevant and probative evidence which is available to him." *Lopez v. Sec'y of Dep't of Health & Human Servs.*, 728 F.2d 148, 150-51 (2d Cir. 1984) (citation omitted).

Furthermore, although the ALJ cited medical evidence to corroborate his conclusion that Plaintiff's limitations caused by fibromyalgia were not severe; he did not address the possibility that Plaintiff's other nonsevere medical problems, such as headaches and abdominal problems, combined with her fibromyalgia, might render her incapable of holding a job.  In short, the ALJ evaluated Plaintiff's ability to perform on a good day.  Without a more thorough examination of how often Plaintiff experienced bad days, it is premature to conclude that she is capable of

(continued...)

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions, and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Plaintiff's motion for judgment on the pleadings is **GRANTED**; and the Court further

**ORDERS** that Defendant's motion for judgment on the pleadings is **DENIED**; and the Court further

**ORDERS** that the Commissioner's decision is **REVERSED** and the case is **REMANDED**, pursuant to sentence four of 42 U.S.C. § 405(g), for further proceedings consistent with this Memorandum-Decision and Order; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in favor of Plaintiff and close this case.

**IT IS SO ORDERED.**

Dated: March 11, 2011
        Syracuse, New York

_____
Frederick J. Scullin, Jr.
Senior United States District Court Judge

---

[24](...continued)
performing light work.  Accordingly, the Court finds that the ALJ should address this issue on remand.